# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

STEVE ANDERSON,

       Petitioner,

v.                                            Case No. 3:16-cv-1553-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

       Respondents.

---

## ORDER

### I. Status

      Petitioner, Steve Anderson, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. See Doc. 1. He challenges his 2009 state court (Duval County, Florida) convictions for first degree murder and carrying a concealed firearm. He is currently serving a life term of incarceration.[1] Respondents have responded. See Doc. 21; Response.[2] Petitioner filed a Reply. See Doc. 25. This case is ripe for review.

---

[1] Prior to trial the state filed a notice of intent to seek the death penalty; however, following Petitioner's penalty phase, the jury recommended that Petitioner be sentenced to life incarceration and the trial court followed that recommendation.

[2] Attached to the Response are numerous exhibits. See Doc. 21-1 through Doc. 21-12. The Court cites to the exhibits as "Resp. Ex."

## II.    **Governing Legal Principals**

### A. **Standard Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

4

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. <u>Analysis</u>

### A. Ground One

Petitioner argues that the trial judge abused his discretion in denying Petitioner's motion for mistrial. From the barebones allegations in the Petition, it appears that trial counsel, Quentin Till, Esquire, moved for a mistrial after the trial court allegedly hindered his ability to ask questions, under the "Colorado Life Jury Selection Method," about the jurors' ability to weigh penalty phase evidence. Doc. 1 at 7-8.

To add context to this issue, the Court will summarize the relevant events that occurred during jury selection. Both parties were permitted to ask the jurors about their ability to weigh and consider aggravating and mitigating evidence if Petitioner's trial proceeded to a penalty phase. Resp. Ex. B at 163. Trial counsel asked the jurors to rate themselves on a spectrum of how likely each juror would vote in favor of the death penalty. The following exchange occurred:

> MR. TILL: I look at this whole board and I see 80 percent with a yes yes to Mr. De la Rionda's question. What I would like to do, and I'll wrap this up, is I'd like to have you give me a little better idea as to where we are. Now, you understand if you could never vote for death, no matter what the situation is, no matter how much mitigation there is, then you're not a person who is suitable for this jury panel because you must weigh these aggravators that the State presents and the mitigators that we present. And, likewise, if you think that every murder case where there's a conviction of first degree murder, everybody automatically gets the death penalty, then you're not suitable to sit on this jury panel because you're not abiding by the law and looking at the mitigators and the aggravators. So we're looking at it so these answers that I have here don't tell me that. I need to find where, between this side of the spectrum and this

side of the spectrum, you know, where are you in this – on this matter. So we have the never vote for death and we have the always vote for death on the other side. So let me – let me ask the question this way to each of you to give me a little better insight and just give it some thought. Let's use a scale of one to seven. I've given you two. One would be I'll never vote for death for religious purposes or whatever, moral purposes, I could never vote for death. That's a one. Seven, if you're guilty of first degree murder, I'm going to kill you, it's going to be a death penalty. Okay? So that's one and that's seven. Okay. In between we'll have a two, a reluctant supporter of the death penalty possibly. Three, a soft supporter, pro death or maybe vague reasons that you may expound. Four, pro death but he's a listener, feels comfortable in the death penalty. Five, pro death, skeptic, has his thoughts about the death penalty. Six, pretty close to a pro death, but not quite there. A person who might consider a life sentence equals an economic burden on society. Death penalty is a deterrent so therefore, I'm a six. And then there's seven which is the automatic death penalty. You're guilty of first degree murder, that's the end of it, close the book. So from one to seven. Does anybody have any questions about that?

(No response from prospective jurors.)

MR. TILL: And give it some thought.

THE COURT: Why don't we make number four because it seemed pretty close –

MR. TILL: Yes, Your Honor.

THE COURT: – that number four is that I would follow the law that the Judge reads me and if the facts and law warrant the death penalty I would impose it? Okay?

MR. TILL: I'm sorry, Judge.

THE COURT: Let's let your example number four be I will follow the instructions of law the Judge will give me and I'll consider all the facts and if the facts warrant the imposition of the death penalty, I'll vote for it.

MR. TILL: Okay, Judge.

THE COURT: Because that seemed pretty close to your number four and then we can use your other numbers if they understand them.

MR. TILL: Do you understand that, how the Judge just modified it? Thank you, Judge. Okay. Now, Ms. Ortiz, let me ask you a question. Where do you stand? I know we've already talked about this. Where would you stand on a scale of one to seven?

PROSPECTIVE JUROR: Could you repeat what's number four again?

MR. TILL: Four?

PROSPECTIVE JUROR: I just want to make sure.

MR. TILL: A pro death –

PROSPECTIVE JUROR: Um-hum.

MR. TILL: – listener, a person, though, who can follow the law and the instructions from the court, who feels comfortable and secure in the death penalty, that wants to hear both sides, will listen to mitigation and could give a life sentence, if the mitigation outweighs the aggravators. And that would be a four. Okay? So with that said –

MR. De la RIONDA: That's not what the Court said.

MR. TILL: I'm sorry, Judge.

THE COURT: Well, you just changed the definition, which is fine. As long as everybody – as long as everyone understands it, that's fine.

PROSPECTIVE JUROR: I'll have number six.

MR. TILL: Six?

PROSPECTIVE JUROR: Yes.

MR. TILL: Okay, ma'am. Mr. Howell.

PROSPECTIVE JUROR: Seven. I was going to go with four, but now that's changed. I have to go back to seven.

THE COURT: Well, let's back up a minute then because I'm sure everybody is almost as confused as I am.

Start all over again, Mr. Till.

Ladies and gentlemen, what I want you to do is if – what I don't want you to do is agree with a number just to agree with a number. Obviously we all know this is a very serious matter. What Mr. Till is trying to find out is if you're so pro death penalty you don't care what the aggravators and mitigators are, you're just going to vote for the death penalty if Mr. Anderson is found guilty of first degree murder. He wants to know if any of those folks are out there.

MR. TILL: Correct, Your Honor. Right.

THE COURT: And I want to know if there are folks out there that will listen to the instructions of law and the facts of this case and make a decision whether death or life without parole is appropriate. And then the other end of the scale, if you will, are individuals who would never vote for the death penalty and for that reason could not vote for guilty in the first phase of the trial.

So can't we go down to just three places, Mr. Till? That is number one is I'm not going to vote for the death penalty regardless.

MR. TILL: Okay. If you don't mind me asking the question.

THE COURT: Then the second choice is that I'll follow the law and the facts and I'll decide and then the third group of people would be folks who would automatically impose the death penalty in the event of a conviction.

MR. TILL: That's fine, Judge.

THE COURT: Okay.

MR. TILL: One, two, and three.

THE COURT: Okay.

MR. TILL: But I would like to ask a little bit more in detail.

THE COURT: Try it.

MR. TILL: Okay. With the modification, okay, it changes this, where do you stand on the death penalty with now it's two, but then again, what is two? I'll follow the law and facts.

Judge, I don't think it's a funny matter.

THE COURT: Well, they just saw me put my hands over my head like this because I already told them what two was and you're changing it again. You're right, it's nothing funny at all about it, but if I had hair, I'd be pulling it out because I already told them what two was. Let me ask the question for you.

Ladies and gentlemen, is there anybody out there – and I think there probably are some because I've heard this before. Are there people out there that simply would not vote for the death penalty under any circumstances? If so, raise your hand.

(Prospective jurors indicating.)

THE COURT: Okay. And we have Mr. Gooden, Ms. Nunn, and Ms. Barber. All right.

Now, if during the guilty phase the defendant is found guilty of first degree murder, is there anybody who, because you found him guilty of first degree murder, would automatically vote for the death penalty if so, raise your hand?

(Prospective juror indicating.)

THE COURT: I see no hands.

PROSPECTIVE JUROR: There's one.

THE COURT: Raise your hand for me.

(Prospective juror indicating.)

THE COURT: And that's Ms. Wisniewski? Am I on the wrong row? Ms. Garner?

PROSPECTIVE JUROR: Yes.

THE COURT: So if the defendant is found guilty of first degree murder, would you automatically vote for the death penalty?

PROSPECTIVE JUROR: (Nods head.)

PROSPECTIVE JUROR: Thank you.
And as far as everyone else, can you follow the law that I will instruct you, in the event of a finding of guilt, and weigh the aggravators and mitigators and either recommend death or life, depending on what's warranted by the facts and the law in this case? Can the rest of you do that?

(Affirmative response from prospective jurors.)

Resp. Ex. B at 175-82.

The next day, trial counsel filed a written motion for mistrial, because the trial judge "grabbed his head in frustration, and made some comment about if he had hair he would be pulling it out" when trial counsel was in the process of using a death penalty grading chart. Resp. Ex. A.2 at 679-80. The trial court denied the motion for mistrial and provided the parties with a written opinion supporting his denial. Resp. Exs. A.2 at 678; A.3 at 949-51. On direct appeal, Petitioner, through appellate counsel, challenged the trial court's denial of the motion for mistrial. Resp. Ex. C. The state filed an answer brief, see Resp. Ex. D, and Petitioner filed a reply brief, see Resp. Ex. E. The First District Court of Appeal per curium affirmed the trial court's denial without a written opinion. Resp. Ex. I.  To the extent that Ground One can be liberally

construed as a federal constitutional challenge[6] and to the extent that the First DCA addressed this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

While a defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors would impose death regardless of the facts and circumstances and law, see Morgan v. Illinois, 504 U.S. 719, 729 (1992), judges are accorded ample discretion in determining how best to conduct voir dire, see Rosales-Lopez v. United States, 451 U.S. 182, 188-89 (1981). In its written opinion denying Petitioner's motion for mistrial, the trial court explained that "[w]hen defense counsel tried to ask a question concerning the 1-7 scale of the jurors' attitude on the death penalty it was obvious to the Court that the question was misleading and not understood by the Court much less the prospective jurors." Resp. Ex. A.3 at 950. As such, the trial court used its discretion and "helped defense counsel rephrase the question and a fair panel was chosen." Id. Further, because the empaneled jury ultimately recommended that Petitioner be sentenced to life in prison, and the trial court followed that recommendation when it sentenced him, Petitioner cannot demonstrate that the trial judge's denial of his motion for mistrial rendered his trial unfair.

As such, upon review of the record, the Court concludes that the state court's

---

[6] Respondents assert that this claim is unexhausted because Petitioner failed to present it to the state court as a federal constitutional claim. Resp. at 21-26. Even if Petitioner failed to cite to federal case law when raising this claim in state court, the state court was given an opportunity to fully address the underlying issue, and thus, the Court finds it exhausted.

adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One is due to be denied.

## B. Ground Two

Petitioner argues that the trial court erred in denying his motion for judgment of acquittal because the evidence failed to establish the elements of the carrying a concealed firearm charge. Doc. 1 at 9-11.

To add context to this claim, the Court will summarize the relevant record evidence. At the close of the state's case, trial counsel moved for a judgment of acquittal arguing, in pertinent part, that the state failed to meet its burden of proving that the gun was concealed because both detectives testified that the gun was in plain view. Resp. Ex. B at 632. In response, the state argued that it was relying on eyewitness Steven Ellis' trial testimony to support that charge. Notably, the trial court and the state engaged in the following colloquy:

> THE COURT: Mr. De la Rionda, tell me what evidence there is that the firearm was concealed from the ordinary view of a person.
>
> MR. De la RIONDA: Mr. Ellis has testified that [defendant] took it out from his back or that he couldn't remember if it was the waist or his pockets specifically. I'm not relying on the officer's observations of the defendant, but on that. And there were also, I believe, other witnesses that said he was doing something with his back as he was walking by and they observed his backside. Specifically Mr. Ellis said when the defendant approached from the back, he had either the gun in his waistband or his pocket. He took the gun out of that position and that's where it would have been concealed.

16

> THE COURT: Is it your position that Mr. Ellis did not see a gun but he saw him reach in some concealed area of his body and pull it out?
>
> MR. De la RIONDA: That is correct, yes, sir.

Resp. Ex. B at 635-36. The Court then explained that "at this point I'm going to deny your motion and I'll revisit it at the end of all the evidence in the case . . . and then I'll check that part of the testimony of Mr. Ellis and we'll talk about it further." Id. at 637. Following trial counsel's presentation of the defense witnesses, trial counsel renewed the motion for judgment of acquittal. Id. at 691. Outside the presence of the jury and upon the trial court's request, the court reporter read aloud Mr. Ellis' testimony regarding the firearm. Id. The following colloquy then occurred:

> THE COURT: Mr. De la Rionda, the only direct evidence that I've heard on the issue of concealment of a firearm was just read where Mr. Ellis testified that the defendant pulled out a gun and he had it in his waist or his both [sic]. Do you have any other?
>
> MR. De la RIONDA: No, sir, I believe that was the testimony that he pulled it out of his waist or out of his pocket. That's correct.
>
> THE COURT: And from that it's your position that you can argue to the jury it was concealed?
>
> MR. De la RIONDA: That is correct.
>
> THE COURT: And, Mr. Till, it's your position that it could have been partially concealed?
>
> MR. TILL: Yes, Your Honor.
>
> THE COURT: Okay. Well, I think there's at least sufficient evidence to permit the jury to decide that question so I will

> permit the jury to determine whether or not it was concealed
> or not. So I'll deny your motion.

Id. at 692-93. On direct appeal, with the help of appellate counsel, Petitioner argued that the trial court erred in denying his motion for judgment of acquittal regarding the carrying a concealed firearm charge. Resp. Ex. C at 23. The state filed an answer in opposition, and Petitioner filed a reply brief. Resp. Exs. D; E. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial of Petitioner's motion for judgment of acquittal on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id. The jury found Petitioner guilty of carrying a concealed firearm contrary to the provisions of section 790.01(2), Florida Statutes. Resp. Ex. A.3 at 991. For a firearm to be concealed, it must be: (1) carried on or about the person, and (2) in such a manner as to be hidden from the ordinary sight of another person. § 790.001(2), Fla. Stat. The main issue is whether an individual, standing near a person with a firearm, may by ordinary observation know the questioned object is a firearm. Ensor v. State, 403 So. 2d 349,

354-55 (Fla. 1981). Absolute invisibility is not a necessary element to finding concealment. Id.

At trial, eyewitness Ellis testified that saw Petitioner shoot the victim. Resp. Ex. B at 265-71. According to Ellis, on the day of the shooting, he and the victim had driven back to the victim's apartment to retrieve the tickets to their high school prom. Id. Ellis waited in the car while the victim went inside. Id. He testified that the victim walked out of his apartment and towards the driver's side of the vehicle. Id. at 271. Ellis then explained the following:

> A  When Jerome [the victim] came to the driver's side of the door, he [Petitioner] came and pulled out a gun on my side of the car.
>
> Q  Okay. So does he come from your side of the car?
>
> A  Yes, sir.
>
> Q  Okay. What did the gun look like?
>
> A  It was a black gun.
>
> Q  Okay. And when you say he pulled it out, what do you mean by that?
>
> A  Seemed like he pulled it out of his waist or his pocket.
>
> Q  And did he have it in his hand?
>
> A  Yes, sir.
>
> Q  Okay. What happened then?
>
> A  He came around to the driver's side where Jerome was.

| Q | So did he go around the back of your truck or in front of you? |
|---|---|
| A | He came around the back. |
| Q | How were you able to see him when he was coming around the back? |
| A | In the rear view mirror. |
| Q | Okay. And were you able to say anything to Mr. Dawson, that here's this man with a gun? |
| A | No, sir. |

Resp. Ex. B at 274-75. Ellis testified that Petitioner then yelled "come here, boy" to the victim, and when the victim began to run back up to his apartment, Petitioner began shooting the victim in the back. Id. at 276-77. Other residents in the apartment complex testified that they heard gunshots and then saw a man running. Id. at 378-80. The man appeared to be adjusting something heavy in his pants or had his hands behind his back adjusting something. Id. at 382, 404.

While the evidence on the concealed weapon charge was thin, taken in the light most favorable to the state, the Court nevertheless finds there was sufficient evidence to permit a rational trier of fact to find Petitioner guilty of carrying a concealed firearm. Further, it is apropos to note that upon his conviction for carrying a concealed firearm, Petitioner received a 16.65-month term of incarceration to run concurrent with his life sentence on count one. See Resp. at 2. Thus, the concealed firearm conviction did not affect the sentence Petitioner ultimately received. As such, upon review of the record, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceedings. Ground Two is due to be denied.

## C. Ground Three and Ground Four

In Ground Three, Petitioner alleges that trial counsel was ineffective for failing

to raise and argue that the statements Petitioner made at the time of his arrest were

obtained in violation of his <u>Miranda</u>[7] rights. Doc. 1 at 12. In Ground Four, Petitioner

asserts that trial counsel was ineffective for failing to file a written argument

supporting Petitioner's pretrial motion to suppress the statements made during

Petitioner's arrest. Doc. 1 at 14-15. In both of these Grounds, Petitioner also seems to

allege that the trial court erred in denying Petitioner's motion to suppress.

As to the claims of ineffective assistance of counsel alleged in Grounds Three

and Four, Petitioner raised these claims in his state court motion for postconviction

relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. N at 5-7.

The trial court conducted an evidentiary hearing on an unrelated ground. Thereafter,

the trial court summarily denied these claims as follows:

> In Ground One, Defendant claims counsel was ineffective for failing to file a motion to suppress the incriminating statement, "I'm the one that you are looking for," because Defendant was not <u>Mirandized</u>[] when he made the statement. Similarly, in Ground Two, Defendant maintains that counsel was ineffective for failing to provide the trial court with written argument to support Defendant's Motion to Suppress Physical Evidence and Statements. These claims are refuted by the record.

---

[7] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

The record shows that on February 1, 2009, counsel filed a Motion to Suppress Physical Evidence and Statements, which specifically requested the trial court suppress the incriminating statement, "I'm the one that you are looking for," along with other incriminating statements and certain physical evidence. (Ex. B.) On February 19, 2009, the trial court held a hearing on the Motion, during which the State presented three witnesses. (Ex. C.) On February 23, 2009, the trial court held another hearing on the Motion to allow the parties to present oral argument. (Ex. D.) At the hearing, trial counsel announced he was not prepared to present oral argument, so the trial court invited both parties to submit written closing arguments. (Ex. D. at 19.) On February 26, 2009, the trial court entered an Order Denying the Motion to Suppress Physical Evidence and Statements, finding the statements made by Defendant were freely and voluntarily made and were not in response to questions asked by law enforcement. (Ex. E.) The trial court also noted that neither party submitted a written closing argument. (Ex. E.) However, at a hearing held the same day, the trial court stated "it did not make a difference" that counsel did not file a written closing argument, "because quite frankly, I'm very knowledgeable of the law in the State of Florida. I did consider all of the facts, and I have prepared an order denying the motion to suppress." (Ex. F at 3-4.) Subsequently, counsel filed a Motion for Rehearing, which the trial court denied in open court on March 2, 2009. (Exs. G, H.)

Contrary to Defendant's claims, Counsel did file a motion to suppress Defendant's incriminating statement. Furthermore, the record establishes that Defendant was not prejudiced by counsel's failure to file a written closing argument, as the trial court's statements show there is no reasonable probability it would have granted the motion to suppress had counsel filed a written argument. As such, Defendant is not entitled to relief.

Resp. Ex. N.2 at 424-25. Petitioner appealed the trial court's order denying his Rule 3.850 motion; however, his pro se brief filed on appeal did not contain argument regarding the trial court's summary denial of these two claims. Resp. Ex. O. As such,

Respondents argue that these two Grounds are unexhausted and procedurally defaulted. Resp. at 37-45.

An appeal following a postconviction proceeding for which an evidentiary hearing was held requires briefs, and failure to include issues in the appellate brief is abandonment of those claims even when the evidentiary hearing is not held on all grounds. Fla. R. App. P. 9.141(b)(3)(C); Cortes v. Gladish, 216 F. App'x 897 (11th Cir. 2007) (finding failure to address issues in an appellate brief following an evidentiary hearing on a Rule 3.850 motion would constitute a waiver of the unbriefed issue); Rogers v. Sec'y, Dep't of Corr., No. 8:07-CV-1375-T-30TGW, 2010 WL 668261, at *53 (M.D. Fla. Feb. 19, 2010) (citing Cortes and finding Rogers waived and defaulted his claim by not briefing the claim after receiving an evidentiary hearing on his Rule 3.851 motion in state court).

Here, Petitioner received an evidentiary hearing on his Rule 3.850 motion. Resp. Ex. N.2 at 423. As such, Petitioner was required to file an appellate brief addressing each claim he wanted the appellate court to review when appealing the trial court's order denying his Rule 3.850 motion. Although he filed an appellate brief, he did not brief the claims raised at bar, electing to brief other issues. Petitioner's failure to fully brief and argue points on appeal constituted a waiver of the allegations in Grounds Three and Four. Thus, they are not exhausted and are now procedurally defaulted.

In his Reply, Petitioner appears to argue that postconviction counsel was ineffective for failing to brief these issues during Petitioner's state postconviction

appeal. <u>See</u> Doc. 25 at 5-8. A review of the trial court docket shows that counsel was appointed to represent Petitioner during the evidentiary hearing. However, following its denial of Petitioner's Rule 3.850 motion, the trial court denied Petitioner's request for counsel to represent him during the postconviction appeal. <u>Id.</u> Petitioner now seems to argue the equitable rule outlined in <u>Martinez</u> to overcome his failure to brief these issues in his pro se appellate brief. Under <u>Martinez</u>, Petitioner must demonstrate more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." <u>Id.</u> (citations omitted); <u>see also</u> <u>Lambrix v. Sec'y Fla. Dept. of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." <u>Id.</u> at 16.

The Court finds that Petitioner cannot demonstrate that his underlying ineffective assistance of counsel claims are substantial in order to overcome his procedural default under <u>Martinez</u>. Indeed, trial counsel filed a motion to suppress and the trial court conducted an extensive hearing on the motion. Resp. Ex. A.4 at 1140-1268. During the hearing, Officer Israel Warren testified that he responded to the dispatcher's call that a shooting had taken place at an apartment complex. <u>Id.</u> at 1146. He heard a description of the suspect on the call. <u>Id.</u> at 1147. According to Warren, as soon as he turned on the street of the apartment complex, he saw Petitioner who matched the suspect's description. <u>Id.</u> at 1148-49. He explained that Petitioner

saw his patrol car and immediately approached it. Id. at 1149. Warren testified that as soon as he advised Petitioner that he was conducting an investigation, Petitioner responded "I'm the one you're looking for." Id. According to Warren, Petitioner did not make the statement in response to any questioning from Warren. Id. at 1150. Warren testified that he then put Petitioner into handcuffs as Petitioner, unprovoked, made the following statements: "I'm the one you're looking for. I did it, officer. Man, I was trying – I was tired of his shit, I told him to leave me alone, he kept bothering me. Y'all was called last night about the same bullshit, talk to Officer Stanford." Id. at 1151.

Following the hearing, the trial court entered a written order denying the motion to suppress, finding that the evidence presented at the evidentiary hearing showed that all the statements made by Petitioner were freely and voluntarily made and were not in response to questions asked by law enforcement. Id. at 473-74. Because Petitioner's allegations that trial counsel was ineffective for failing to file a motion to suppress lacks any factual support and because his claim that counsel was ineffective for failing to submit a written argument lacks merit, Petitioner's Strickland claims are unsubstantial. Therefore, Petitioner cannot benefit from the Supreme Court's holding in Martinez, and he must satisfy Coleman's cause and prejudice standard or satisfy the fundamental miscarriage of justice exception. He cannot meet either exemption. As such, this Court finds the ineffective assistance of counsel claims in Grounds Three and Four are procedurally defaulted. See Coleman, 501 U.S. at 729-30.

Insofar as, Petitioner alleges that the trial court erred in denying Petitioner's motion to suppress, there is no record evidence that Petitioner exhausted these claims in state court. Thus, they are unexhausted and procedurally defaulted and Petitioner fails to show cause or prejudice to excuse this procedural default. He further fails to demonstrate a fundamental miscarriage of justice. Ground Three and Ground Four are due to be denied.

### D. Ground Five

Petitioner alleges that trial counsel was ineffective for failing to contemporaneously file a motion for mistrial when, during jury selection, the trial court exhibited the alleged noticeable signs of frustration summarized in Ground One above. Doc. 1 at 16-17. Petitioner maintains that trial counsel's decision to wait until the next day to file a written motion for mistrial was inadequate to correct the error.

Petitioner raised these allegations in his Rule 3.850 motion. Resp. Ex. N.1 at 9-10. The trial summarily denied the allegations as follows:

> In Ground Three, Defendant maintains that counsel was ineffective for failing to file a timely, contemporaneous motion for mistrial during jury selection. This claim is refuted by the record. Jury selection began on August 3, 2009. The next day, counsel filed a Motion for Mistrial arguing the trial court prohibited counsel from posing certain hypothetical questions during jury selection and the trial court improperly pantomimed the act of "tearing one's hair out." (Ex. L) Counsel acknowledges in the motion that he did not make a contemporaneous oral motion for mistrial during jury selection when the events in question took place. The trial court denied the motion for mistrial in open court on August 4, 2009. (Ex. J.) However, on August 17, 2009, the trial court entered a written order setting forth the reasons for denying the motion for mistrial, in which the trial court considered the merits of the Motion. (Ex. K.) As

> such, Defendant has failed to show that he was prejudiced
> by counsel's failure to contemporaneously move for a
> mistrial during jury selection. As such, Defendant is not
> entitled to relief.

Resp. Ex. N.2 at 426. Petitioner briefed this issue in his pro se appellate brief filed during his appeal of the trial court's order denying his Rule 3.850 motion, see Resp. Ex. O at 11, and the state filed an answer brief, see Resp. Ex. P. The First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. R. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Petitioner argues that trial counsel's motion for mistrial was filed "too late to allow for correction of any asserted error." While trial counsel may not have filed the motion for mistrial until the day after the trial court allegedly showed signs of frustration and after the jury was selected, the trial court denied the motion for mistrial on the merits. On direct appeal, Petitioner challenged the trial court's denial of the motion for mistrial and the First DCA affirmed the trial court's decision. Because Petitioner's motion for mistrial was fully adjudicated on the merits in state court, Petitioner has failed to show how trial counsel's failure to contemporaneously object during jury selection deemed the objection "too late to allow for corrections." Further, as discussed in the Court's analysis of Ground One above, after observing that the jurors were clearly confused with trial counsel's questioning, the trial court used its discretion to rephrase trial counsel's questions. Petitioner has failed to demonstrate prejudice, and after a review of the record and the applicable law, the

Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is due to be denied.

## E. Ground Six

Petitioner argues that the state's failure to inform Petitioner that Ellis' trial testimony would be different than his deposition testimony violated Petitioner's rights under the Sixth and Fourteenth Amendment. In support of this claim, Petitioner contends that during trial, Ellis testified that he saw Petitioner standing behind the vehicle and he pulled a gun from either his waistband or his pocket. However, according to Petitioner, during his deposition, Ellis testified that he saw Petitioner pull the gun from his waistband and never mentioned it might have been in his pocket. Petitioner avers that the trial court relied on Ellis' inaccurate trial testimony to deny Petitioner's motion for judgment of acquittal on the carrying a concealed weapon charge.

Petitioner appears to have raised this claim in his Rule 3.850 motion by alleging that the state's failure to disclose Ellis' change in testimony amounted to a Richardson[8] violation. Resp. Ex. 11-12. The trial court summarily denied the claim in relevant part:

> In Ground Four, Defendant contends the trial court
> erred by not holding a Richardson[] hearing when the State

---

[8] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

failed to inform Defendant of a conflict between witness Steven Ellis's deposition testimony and trial testimony. Defendant contends the State's failure to inform Defendant of the change in the witness's testimony was "tantamount to failing to disclose witness and thus state committee [sic] discovery violation . . . ." (Def.'s Mot. 11.) Defendant's allegation that the trial court should have held a <u>Richardson</u> hearing could have been raised on direct appeal and is therefore not proper in a motion for postconviction relief. <u>Stallings v. State</u>, 319 So. 2d 640, 641 (Fla. 1st DCA I 975) ("A motion to vacate and set aside judgment and sentence is properly denied when the matters could have been raised on direct appeal.") (citation omitted). The purpose of a rule 3.850 motion is to provide a means of inquiry into the alleged constitutional infirmity of a judgment or sentence, not to review ordinary trial errors cognizable by means of a direct appeal. <u>Ratliff v. State</u>, 256 So. 2d 262, 264 (Fla. 1st DCA 1972). In addition, even if Defendant's claim was cognizable in the instant rule 3.850 Motion, the Court finds that Mr. Ellis's trial testimony did not conflict with his deposition testimony such that it was "tantamount to failing to disclose a witness." (Exs. L, M, N.) At his Deposition, Mr. Ellis gave the following testimony:

> Q: So did you say anything to Jerome[9] about the gun?
>
> A: No, ma'am.
>
> Q: Okay. And when you say "waistband," you don't know if he's pulling it out of his waistband or from the area or from the pocket or just?
>
> A: All I seen was he just pulled it out (demonstrating).

(Ex. L at l3.) Similarly, Mr. Ellis testified at trial that it "[s]eemed like he pulled [the gun] out of his waist or his pocket." (Ex. N at 274.) Mr. Ellis seemed unable to pin point the exact location from which Defendant pulled his gun both

---

[9] Jerome is the victim in this case.

> times he provided testimony on the matter. Accordingly,
> Defendant is not entitled to relief on this claim.

Resp. Ex. N.2 at 426-27. Petitioner appealed the trial court's order denying his Rule 3.850 motion; however, his pro se brief filed on appeal did not contain argument regarding the trial court's summary denial of this claim. Resp. Ex. O. As such, Respondents argue that this Ground is unexhausted and procedurally defaulted. Resp. at 68-70.

Petitioner's failure to brief this issue during his postconviction appeal renders it unexhausted and procedurally defaulted. See Cortes, 216 F. App'x at 897. In his Reply, Petitioner recognizes this claim is unexhausted, but argues that the Court should overlook this procedural bar because he was denied effective postconviction counsel. Doc. 25 at 11-12 (citing Martinez, 566 U.S. at 9-10). However, the holding in Martinez is narrow and only applies to overcome the procedural default of an ineffective assistance of trial counsel claim. See Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel otherwise procedurally barred due to the ineffective assistance of post-conviction counsel."). Thus, Petitioner's reliance on Martinez is misplaced and inapplicable. Nevertheless, even if Martinez were applicable to this claim, this claim is unsubstantial because it lacks factual support and is meritless. As the trial court noted in its order, Ellis' deposition testimony was substantially the same as his trial testimony. See Resp. Ex. N.2 at 427. Thus, Ground Six is due to be denied.

## F. Ground Seven

In Ground Seven, Petitioner argues that trial counsel was ineffective for failing to file a motion to recuse the trial judge when he showed signs of frustration during jury selection. Doc. 1 at 20-21. The alleged signs of frustration are described in Ground One of this Order.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. N.1 at 13-14. The trial court summarily denied the claim as follows:

> In Ground Five, Defendant claims counsel was ineffective for failing to move to recuse the trial judge when he exhibited "signs of frustration, illness and or intolerance" during jury selection. (Def.'s Mot. 13.) Claims of judicial bias during trial should be raised on direct appeal and are procedurally barred in postconviction proceedings. Rodriguez v. State, 919 So. 2d 1252, 1274 (Fla. 2005); Wilacy v. State, 967 So. 2d 131, 142 (Fla. 2007) (holding postconviction claim that trial counsel was ineffective for failing to move to recuse trial judge should have been raised on direct appeal). As such, Defendant is not entitled to relief.

Resp. Ex. N.2 at 427-28. Petitioner briefed this issue in his pro se appellate brief filed during his postconviction appeal, arguing that the trial court erred in not allowing Petitioner an opportunity to amend this claim before summarily denying it. Resp. Ex. O at 18. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. R. Although the state court declined to consider this claim on the merits and found it was not cognizable on collateral review, Respondents do not assert the affirmative defense of procedural default. Resp. at 46-67. Nevertheless, the Court need not decide the adequacy of the state's procedural bar or the question of whether Respondents waived such defense as this claim fails on the merits.

The Florida Rules of Judicial Administration provide for the disqualification of a judge on the ground "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330(d)(1); see also Thompson v. State, 990 So. 2d 482, 489–90 (Fla. 2008). "[T]he legal sufficiency of a motion to disqualify depends on 'whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial.'" Thompson, 990 So. 2d at 490 (quoting Livingston v. State, 441 So. 2d 1083, 1087 (Fla. 1983)). Counsel's failure to file a sufficient motion to disqualify may constitute deficient performance under Strickland. See id. at 489. The defendant may show prejudice if the deficiency renders the result of the proceeding unreliable and undermines confidence in the outcome. See id. at 490;

As an initial matter, Petitioner's claim, as presented in the Petition, is too general and conclusory to support a claim for federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). The only evidence that Petitioner offers to support this claim is that the trial judge exhibited frustration at trial counsel's confusing questions during voir dire. However, there was no basis for moving to disqualify the trial judge, and trial counsel was not deficient in failing to file such a motion.

Further, Petitioner cannot show prejudice resulting from trial counsel's failure to move to disqualify the trial judge. As the trial judge explained in his opinion denying Petitioner's motion for mistrial, "if the [trial] [c]ourt felt that it's statements or rulings

were in any way prejudicial a continuance would have been granted and a new jury selected." Resp. Ex. A.3 at 950. Notably, the trial court clarified that "[t]he best evidence of the fact that defendant received a fair trial by an impartial jury was the actual excusal of several jurors for cause because of their attitude toward the death penalty and the fact that the selected jury recommended life imprisonment to the [trial] [c]ourt when the evidence was overwhelming that the defendant shot the victim in the back five times causing his death." Id. The trial court also followed the recommendation of the jury and sentenced Petitioner to life imprisonment. Accordingly, Petitioner has not demonstrated prejudice under Strickland. Ground Seven is due to be denied.

## G. Ground Eight

Petitioner argues that the state violated his due process rights by requiring him "to stand trial and defraud himself against charges that it [knew were] based upon perjured" testimony from material witness Officer S.S. Russo.[10] Doc. 1 at 22-23. He also appears to allege that trial counsel was ineffective for failing to challenge the Indictment because it was based on perjured testimony.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. N.1 at 15. The trial court summarily denied this issue, finding in relevant part:

> In Ground Six, Defendant challenges the sufficiency of the indictment and claims the State "violated Florida's due process clause by requiring Defendant to stand trial and defraud himself against charges that it knows are based upon perjured, material testimony witness and detective,

---

[10] Officer S.S. Russo was the officer who completed Petitioner's arrest and booking report. Resp. Ex. A.1 at 1-4.

defense counsel failed to impeach." (Def.'s Mot. l5.) Defendant contends counsel was ineffective for failing to challenge the allegedly defective indictment. Specifically, Defendant complains that counsel never knew who testified before the grand jury, and that counsel should have objected because it was based on perjured testimony and that "S.S. Russo #6281 is not a material witness." (Def.'s Mot. 15.)

The record shows that counsel filed a Motion for Transcripts of Grand Jury Proceedings on February 2, 2009 at Defendant's request. (Ex. O.) In the Motion, counsel requested the transcripts to "[a]scertain[] whether the testimony of the witness is consistent with the testimony of the witness which will be given by the witness before the Court." (Ex. O at 1.) On February 5, 2009, the trial court heard argument in support of the Motion, but ultimately denied the Motion, citing <u>Murry v. State</u>, 3 So. 3d 1108, 1119 (Fla. 2009). (Ex. P.) Moreover, Officer Russo did not testify at trial, so counsel never had the opportunity to cross examine him to impeach his grand jury testimony. (Ex. N at 403, 604.)

Moreover, unless an indictment or information is fundamentally defective, the failure to file a timely motion to dismiss waives the defect and it may not be raised for the first time after trial. <u>Jones v. State</u>, 415 So. 2d 852, 853 (Fla. 5th DCA l982). A charging document is fundamentally defective if it totally omits an essential element of the crime or is so vague, indistinct, and indefinite as to mislead the defendant. <u>Id.</u> (citing <u>State v. Fields</u>, 390 So. 2d 128 (Fla. 4th DCA 1980)). Defects in charging documents "are not always fundamental where the omitted matter is not essential, where the actual notice provided is sufficient, and where all the elements of the crime in question are proved at trial." <u>Carbajal v. State</u>, 75 So. 3d 258, 262 (Fla. 2011) (quoting <u>State v. Gray</u>, 435 So. 2d 816, 818 (Fla. 1983)). Further, "[i]f the information recites the appropriate statute alleged to be violated, and if the statute clearly includes the omitted words, it cannot be said that the imperfection of the information prejudiced the defendant in his defense." <u>Jones</u>, 415 So. 2d at 853 (citation omitted).

Defendant's indictment refers to the relevant statutory provisions, Florida Statutes sections 782.04-(l)(a)

and 775.087(1), and states that Defendant "did then and there kill [the victim] . . . by shooting him, and during the commission of the aforementioned Murder in the First Degree . . . [Defendant] carried, displayed or used a firearm . . . ." (Ex. R.) Thus, Defendant was on notice of the offenses charged, the victim's name, and the date and location of the crime. (Ex. R.) Finally, to the extent Defendant argues the State violated his due process rights by requiring Defendant to stand trial based on fraudulent perjured testimony, the Court finds these are direct appeal issues. See Stallings, 319 So. 2d at 641 ("A motion to vacate and set aside judgment and sentence is properly denied when the matters could have been raised on direct appeal.") (citation omitted). As Defendant's indictment was not fundamentally defective, Defendant waived any challenges to the indictment by not raising them at trial.

Resp. Ex. N.2 at 428-29. Petitioner appealed the trial court's denial; however, he did not brief this issue in his pro se appellate brief filed during the postconviction appeal. Resp. Ex. O. As such, Respondents assert that this claim is unexhausted and procedurally defaulted. Resp. at 71-72. Petitioner appears to acknowledge that this claim is unexhausted, but he argues that the Court should excuse this procedural bar pursuant to Martinez. Doc. 25 at 13-14.

To the extent that Petitioner claims that the state violated his due process rights by allegedly obtaining perjured testimony from Russo to pursue charges against Petitioner, he cannot rely on Martinez to overcome the procedural default of such claim. Notably, Martinez only applies to procedurally barred claims of ineffective assistance of trial counsel. See Gore, 720 F.3d at 816.

To the extent Petitioner relies on Martinez to overcome the procedural default of his claim that trial counsel was ineffective for failing to challenge the Indictment, the Court finds such claim insubstantial. To challenge an indictment in a federal

habeas proceeding, the charging document must be so defective that it deprives the court of jurisdiction. See DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."). The Indictment set forth the charges and circumstance of the offense, and it was clearly not "so deficient" that it deprived the trial court of jurisdiction. Resp. Ex. A.1 at 25-26. Therefore, Petitioner cannot benefit from the Supreme Court's holding in Martinez, and he must satisfy Coleman's cause and prejudice standard before he would be entitled to federal habeas corpus relief. This Court finds Petitioner fails to demonstrate cause and prejudice, and he fails to satisfy the fundamental miscarriage of justice exception. As such, this Court finds the claim is procedurally defaulted. See Coleman, 501 U.S. at 729-30. Ground Eight is due to be denied.

### H. Ground Nine

Petitioner asserts that he "should not [have been] charged with carrying a concealed firearm where state witness could only presume actually where the weapon was and there [were] inconsistent statements." Doc. 1 at 24. He claims that the only evidence supporting this crime was Ellis' testimony; however, the state "never presented any testimony that the gun was anywhere other than the hand of" Petitioner.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. N.1 at 17. The trial court summarily denied this claim, finding in pertinent part:

In Ground Seven, Defendant claims he "should not be charged with carrying a concealed firearm where state witness could only presume where the weapon was and there was inconsistent statements." Defendant's allegation that the State did not have sufficient evidence to charge him with carrying a concealed firearm could have been raised on direct appeal and is therefore not proper in a motion for postconviction relief. Childers v. State, 782 So. 2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850.") (citations omitted). As such, Defendant is not entitled to relief on this claim.

Resp. Ex. N.2 at 430. Petitioner briefed this issued in his pro se appellate brief appealing the trial court's summary denial. Resp. Ex. O at 26. The First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. R.

Respondents contend that this claim is procedurally barred because the state court declined to consider it based on an independent and adequate state procedural ground. Resp. at 73-75. A procedural default may result from non-compliance with state procedural requirements. See Coleman, 501 U.S. at 729-30. Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. Wainwright v. Sykes, 433 U.S. 72, 85-86 (1977). The procedurally correct way to raise a claim challenging the sufficiency of the evidence in state court is by direct appeal, and the procedural bar imposed in Petitioner's case is firmly established and regularly followed in the Florida courts. See Fla. R. Crim. P. 3.850(7); Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001) ("To the extent that the allegations challenged

the factual basis and sufficiency of the evidence, such claims cannot be raised in a Rule 3.850 motion, especially where (as occurred in the instant case) a direct appeal was taken."); Teffeteller v. State, 734 So. 2d 1009, 1016 (Fla. 1999) (holding substantive claims procedurally barred because they could have been raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

In his Reply, Petitioner recognizes this claim is unexhausted, but argues that the Court should overlook this procedural bar because he was denied effective postconviction counsel. Doc. 25 at 15 (citing Martinez, 566 U.S. at 9-10). However, as previously indicated, Petitioner's reliance on Martinez is misplaced as Martinez only applies to overcome the procedural default of an ineffective assistance of trial counsel claim. See Gore, 720 F.3d at 816. Therefore, Petitioner cannot benefit from the holding in Martinez, and he must satisfy Coleman's cause and prejudice standard before he would be entitled to have this default excused.

This Court finds Petitioner fails to demonstrate cause and prejudice, nor has he satisfied the fundamental miscarriage of justice exception. As such, this Court finds the claim is procedurally defaulted. See Coleman, 501 U.S. at 729-30. In any event, as described in the Court's analysis of Ground Two, the Court finds there was sufficient evidence to permit a rational trier of fact to find Petitioner guilty of carrying a concealed firearm. As such, Ground Nine is due to be denied.

# I. Ground Ten

Petitioner alleges that trial counsel was ineffective for advising Petitioner not to testify at trial and for "not stating the comments [t]hat victim said coming downstairs." Doc. 1 at 27-31. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. N.1 at 19-21. The trial court conducted an evidentiary hearing on this claim. Id. at 271. Thereafter, the trial court found the following:

> In Ground Eight, Defendant alleges that counsel was ineffective for advising Defendant not to testify because his past criminal record would become known to the jury. At the evidentiary hearing, Defendant testified that counsel advised him not to testify at trial, because the jury would hear the number of previous convictions and the facts and circumstances surrounding the convictions. (Evidentiary Hr'g Tr. at 9-10.) Defendant also stated that he decided not [to] testify at trial because of that advice. (Id. at 10.) Defendant also stated that if he had testified, he probably would have had to admit that he shot the victim. (Id. at 20.)

> Counsel testified that he has been practicing criminal law for forty-four years. (Id. at 24.) Counsel stated that he keeps current in his field about litigation strategies and techniques in representing capital defendants through attending seminars and part of his current duties at the public defender's office is to mentor and train and observe attorneys who try homicide cases. (Id. at 26-27.) Counsel stated that he has tried approximately 125 homicide cases since 1969, of which approximately 40 were death penalty cases. (Id. at 29.) Counsel explained that the State's evidence against Defendant was strong, so the focus of the defense was on the penalty phase. (Id. at 41-45.)

> Counsel testified that he advised Defendant that if he testified the number of his prior felonies could be brought before the jury. (Id. at 52.) Counsel further testified that defendants can accidentally "open the door" to more information on cross by presenting misleading testimony about their prior convictions. (Id. at 48-49.) Counsel testified that he never advised Defendant, that without

opening the door, the jury would learn the substance of his convictions. (<u>Id.</u> at 53.) Counsel also opined that Defendant's testimony during the guilt phase of his trial would have only harmed his case, because "[i]t would have been [Defendant's] testimony, opposed to seven eyewitnesses, incriminating statements made by [Defendant], the gun found that murdered this individual found [sic] in his back pocket, and eyewitnesses all over that complex, and as he was fleeing the scene, when he got as far as seven blocks away." (<u>Id.</u> at 57-58.) Moreover, Counsel testified that Defendant was adamant that he was not going to testify at trial. According to counsel, Defendant "made it quite clear, you're the attorneys, you carry the ball, I'm not going to testify." (<u>Id.</u> at 54.)

The Court finds counsel's testimony that he did not advise Defendant the jury would learn the nature of his convictions if he testified at trial to be more credible than Defendant's testimony. <u>See</u> <u>Moore v. State</u>, 458 So. 2d 61, 61 (Fla. 3d DCA 1984) (during hearing on 3.850 motion trial court may reject defendant's testimony in favor of conflicting testimony of counsel); <u>Ballard v. State</u>, 200 So. 2d 597, 598 (Fla. 3d DCA 1967) (trial court is entitled to deny motion for postconviction relief based on trial counsel's testimony). According to counsel's testimony, he advised Defendant that the jury would not learn the nature of his convictions as long as he testified truthfully about the number of his convictions. In addition, the Court also finds that Defendant has not established he would have testified were it not for counsel's alleged misadvice, as counsel testified that Defendant was consistently unyielding in his decision that he would not testify at trial. The Court finds that counsel was not deficient, and, as such, Defendant is not entitled to relief. <u>See</u> <u>Stewart v. State</u>, 801 So. 2d 59, 65 (Fla. 2001) ("[B]ecause the <u>Strickland</u> standard requires establishment of both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong.") (citations omitted).

Resp. Ex. N.2 at 430-32. Petitioner appealed the trial court's denial, <u>see</u> Resp. Ex. O,

and the First DCA per curiam affirmed the trial court's denial without a written

opinion, see Resp. Ex. R. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

In his Rule 3.850 motion, Petitioner argued that his trial testimony was necessary to support his self-defense theory. Resp. Ex. N.1 at 19. He claimed that he would have testified that the victim was threatening to kill Petitioner and that he shot the victim because the victim was running toward Petitioner. Id. However, at trial, Petitioner advised the trial court that he did not wish to testify and that he had an adequate opportunity to consider his decision. Resp. Ex. B at 641-42. Further, at the evidentiary hearing, Mr. Till testified that Petitioner was adamant about not wanting to testify at trial. Resp. Ex. N.1 at 370, 374. Trial counsel also explained that it would not have been in Petitioner's best interest to testify because Petitioner's testimony would have been "in direct conflict to the seven eyewitnesses" who saw or heard the murder. Id. at 377-78. As such, trial counsel stated that in his opinion, Petitioner's trial testimony would have harmed trial counsel's penalty phase strategy. Id. at 378. The state court found trial counsel's evidentiary hearing testimony credible. Petitioner has failed to demonstrate that the state court's rejection of this claim was contrary to or an unreasonable application of Strickland, or an unreasonable determination of the facts in light of the evidence adduced in state court. Ground Ten is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[11]

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of January, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

---

[11] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7
C:    Steve Anderson, #097275
      Anne Catherine Conley, Esquire